UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES E. CHAPMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-204 (CEJ) |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of James Chapman for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent has filed a response in opposition, and the issues are fully briefed.

**I.    Procedural Background**

Petitioner James Chapman is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri, pursuant to the sentence of the Circuit Court of the City of St. Louis. On June 9, 2006, following a jury trial, petitioner was found guilty of forcible sodomy, assault in the second degree, two counts of armed criminal action, kidnapping, and two counts of attempted forcible sodomy. On July 14, 2006, the trial court sentenced petitioner to an aggregate term of 50 years' imprisonment. Resp. Ex. A; Resp. Ex. B.

On January 15, 2008, the Missouri Court of Appeals affirmed the judgment of the trial court. Resp. Ex. E; State v. Chapman, 243 S.W.3d 491 (Mo. Ct. App. 2008). On May 6, 2008, petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Counsel was appointed for petitioner and filed an amended motion. The Missouri Circuit Court denied the motion on June 30, 2009. Resp. Ex. F. The Missouri Court of Appeals affirmed on April 20, 2010. Ex. I.

In the instant § 2254 petition, petitioner asserts three grounds for relief: (1) that the state failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963); (2) that trial counsel was ineffective, in that counsel failed to (i) obtain the complete DNA file from the state, (ii) argue a defense of duress at trial, and (iii) object to the introduction of petitioner's statement to police requesting a lawyer; and (3) that petitioner's attorneys did not provide him with his complete case file.

## II. Factual Background

Petitioner and the victim, seventeen-year-old J.W., worked together at a construction company. J.W. testified that, on the evening of July 16, 2004, petitioner called J.W. and said that he had a family emergency and needed someone to watch his children. J.W. agreed to help, and petitioner picked him up. After J.W. got in the car, petitioner pointed a gun at him and drove to a house that the company was rehabbing. Petitioner took J.W. to a second-floor bedroom where Joe Henningfield, the owner of the construction company, was waiting. Henningfield, petitioner, and two other employees of the company, Aaron Napier and Anthony Correnti, beat J.W. with two-by-four boards, and duct-taped J.W.'s hands behind his back. Petitioner placed J.W. over a cooler, and Henningfield anally sodomized J.W. Meanwhile, petitioner attempted to force his penis into J.W.'s mouth, but J.W. turned his head. Petitioner ejaculated on J.W.'s face and shirt, and Henningfield ejaculated onto J.W.'s back. Napier also forced J.W. to perform oral sex on him, and Henningfield sodomized J.W. with a broom. J.W. escaped through an open window while his assailants were distracted.

At the hospital, J.W. was given a rape exam. Detectives seized J.W.'s clothing, and a board, a broom handle, beer bottles, and duct tape from the crime scene.

Petitioner's DNA matched the DNA found on a beer bottle found at the crime scene and in semen stains on J.W.'s shirt and. J.W.'s DNA was found on the broom handle.

Petitioner was interviewed by the police. He initially denied any knowledge of the assault, but later made oral and written statements that Henningfield suspected J.W. was stealing air conditioners and other items from him, and that petitioner and Henningfield planned to "teach [J.W.] a lesson." Petitioner stated that he lured J.W. to the house to steal air conditioners. J.W. went to the house willingly and Napier came as well. Petitioner stated that he did not expect Henningfield to physically attack or sodomize J.W., and tried to stop Henningfield, but finally cooperated out of fear.

Napier testified that he, petitioner, and Henningfield had lured J.W. to the house to catch J.W. in the act of stealing. When Napier entered the house, he saw J.W. was on top of a cooler with his hands duct-taped behind his back. Napier testified that he and petitioner forced J.W. to perform oral sex on them, and Henningfield anally sodomized J.W with his penis and a broom.

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it

confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir.2004). "[T]he prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

IV. Discussion

### A. Ground One

Petitioner claims that the prosecution failed to disclose exculpatory evidence as required by the due process clause of the Constitution and Brady v. Maryland, 373 U.S. 83 (1963). Respondent suggests that this claim is procedurally defaulted. Because petitioner's claim is clearly unavailing, the Court will address the merits of the claim despite any procedural default. See Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (allowing federal habeas courts to bypass a procedural default issue and proceed to the merits when relief is denied).

Under Brady, the prosecution has a duty to disclose material evidence favorable to the defense. Brady v. Maryland, 373 U.S. 83, 87 (1963). Failure to do so constitutes a violation of due process. Id. Evidence favorable to the accused is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Liggins v. Burger, 422 F.3d 642, 651-52 (8th Cir. 2005) (quotations omitted).

In this case, the DNA lab reports were disclosed prior to trial, but the DNA case notes were not produced by the police department, either to the prosecution or to the defense. Resp. Ex. A, at 942-43. The post-conviction court ordered the complete DNA records to be produced at petitioner's request. Resp. Ex. F, at 20. Petitioner now argues that the failure to disclose the entire DNA file, including case notes, prior to trial was a violation of due process. However, petitioner has not alleged any facts to suggest that the case notes contain any material exculpatory information, or that the case notes contain information different from the lab reports disclosed prior to trial. Accordingly, ground one will be denied.

### B. Ground Two

Petitioner next argues that he received ineffective assistance of trial counsel, in that counsel failed to (i) obtain complete DNA discovery, (ii) pursue a duress defense, and (iii) object to the introduction of defendant's statement to the police about wanting an attorney. While all three grounds of ineffective assistance were raised in petitioner's motion for post-conviction relief (Resp. Ex. F), petitioner failed to include the first two grounds in his appeal. Resp. Ex. I. Respondent argues that petitioner is procedurally barred from raising those claims before this Court. Again, the Court will bypass the issue of procedural default and consider the merits of the claim.

In order to establish a claim of ineffective assistance of trial counsel, petitioner must demonstrate that his counsel's performance was deficient and that petitioner was prejudiced by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. Strickland, 466 U.S. at 687. To establish prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner first argues that counsel was ineffective for failing to obtain complete discovery of DNA evidence. However, as discussed above, petitioner has not pointed to any portion of the raw DNA evidence or case notes that is beneficial to the defense, or that is different from the DNA lab reports that counsel did obtain in advance of trial. Therefore, petitioner cannot establish that counsel acted unreasonably or that petitioner was prejudiced by this conduct.

Next, petitioner contends that trial counsel should have raised the defense of duress. Under Missouri law, duress is an "affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to

do so, by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist." Mo. Rev. Stat. § 562.071.1. Petitioner's claim that he "did what he did" because he was afraid of Joe Henningfield would have been insufficient to establish a defense of duress. Petitioner has not shown the existence of any evidence showing that Joe Henningfield ever used force against him, or threatened to do so. Furthermore, pursuing an affirmative defense may have undermined trial counsel's attempt to suggest that J. W. imagined or embellished the events of that night. Accordingly, the Court cannot conclude that trial counsel's decision not to pursue a theory of duress was unreasonable.

Finally, petitioner argues that counsel was ineffective in failing to object to the introduction of the portion of petitioner's statement to the police wherein he requested an attorney. At trial, a police detective testified that she read petitioner the Miranda warnings before questioning him. Petitioner told the detective his version of the events, and then put his statement in writing. When asked whether he wanted to provide additional detail to his statement, petitioner responded, "I wasn't sure I should write that without an attorney present." At that point, the detective immediately ended the interview. Trial counsel did not object to this testimony. Resp. Ex. A, at 645-660.

Petitioner complained of defense counsel's failure to object in his motion for post-conviction relief. The state courts concluded that an objection to the testimony would have been meritless. Resp. Ex. F, at 48; Resp. Ex. I. While under Doyle v. Ohio, 426 U.S. 610 (1976), the prosecution may not use defendant's silence against him, once the right to remain silent is waived and defendant subsequently refuses to

answer questions, the prosecution may note that refusal.  See U.S. v. Harris, 956 F.2d 177, 181 (8th Cir. 1992) ("If the accused subsequently refuses to answer further questions, the prosecution may note the refusal because it now constitutes part of an otherwise admissible conversation between the police and the accused.").  The state courts found that the prosecution was entitled to show the manner in which the interview ended, and petitioner's statement was an admissible part of that.  Because counsel's failure to advance a nonmeritorious argument does not support an ineffective assistance claim under Strickland, the state post-conviction courts denied petitioner relief on this ground.  See Gray v. Bowersox, 281 F.3d 749, 756 n.3 (8th Cir. 2002).

"The question is not whether [the Court] believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable - a substantially higher threshold."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).  There is some disagreement over the extent to which an invocation of the right to an attorney terminating an interview is admissible under Doyle. See, e.g., Babick v. Berghuis, 620 F.3d 571, 580 (6th Cir. 2010) (finding that petitioner could not raise a Doyle objection to the admission of his statement requesting an attorney after he voluntarily spoke after receiving Miranda warnings); but see, U.S. v. Andujar-Basco, 488 F.3d 549, 556 (1st Cir. 2007) (finding error in allowing testimony concerning assertion of Miranda rights; "[a]t least with respect to clear affirmative assertions, we do not see how an initial Miranda waiver can operate to make a subsequent Miranda assertion admissible against the defendant.").  However, the Court does not believe the Missouri court's interpretation of Doyle was unreasonable.

Furthermore, petitioner cannot show that his counsel's failure to object resulted in the prejudice required to satisfy the second prong of Strickland. The evidence presented at trial was strong. There is no reasonable probability that, had counsel objected to the detective's testimony, the result of the trial would have been different.

Accordingly, petitioner is not entitled to relief on this ground.

### C. Ground Three

Petitioner's third ground for relief---that the attorneys who represented him at trial, on appeal, and in post-conviction proceedings did not provide him with a complete case file--- is not cognizable in a federal habeas corpus proceeding, because the claim does not go to the validity of his confinement. See Rudd v. Johnson, 256 F.3d 317, 320 (5th Cir. 2001) (reasoning that petitioner's objection to his lack of access to state's case file during habeas review is a challenge to a collateral proceeding, and not to the detention itself). Relief on this ground will be denied.

### IV. Conclusion

For the reasons discussed above, the Court finds that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 15th day of October, 2013.